The Honorable David Johnson State Representative 1704 North Harrison Street Little Rock, Arkansas 72207-5324
Dear Representative Johnson:
I am writing in response to your request on two questions concerning check-cashers as defined at A.C.A. § 23-52-102. You state the following facts and pose the following two questions:
 First, the Arkansas Military Service Protection Act, codified at A.C.A. § 12-62-801 et seq., guarantees a person who has engaged in military service a right to be free of discrimination. This right, although apparently unlimited, applies specifically to obtaining credit and entering contractual transactions. See A.C.A. § 12-62-801(a)(1)(D). With regard to this right or any right under the Arkansas Military Service Protection Act, I request your opinion about whether the Military Service Protection Act prohibits a check-casher from denying check cashing services with deferred presentment options, otherwise known as payday loans, to members of active and reserve components of the United States Armed Forces based on such membership.
 Second, Congress recently enacted the John Warner National Defense Authorization Act for Fiscal Year 2007 (hereinafter "the Act"). Among its provisions, Section 987 of the Act establishes an annual interest rate ceiling for certain loans to members of the United States Armed Forces. On August 31, 2007, the United States Department of Defense promulgated a final rule under the Act at 32 CFR Part 232. In light of the ceiling established by the *Page 2 
Act, I request your opinion about the applicability of such ceiling to deferred presentment options arrangements offered by check-cashers in Arkansas including in particular the maximum annual percentage rate of interest that check-cashers in Arkansas may charge for deferred presentment options under the Act.
RESPONSE
In response to your first question, in my opinion the state "Military Service Protection Act" would operate to prohibit a check-casher from denying check cashing services with deferred presentment options to members of active and reserve components of the United States Armed Forces based on such military service, were it not for the fact that the federal law you reference expressly prohibits consumer credit transactions to such military members that are based upon the use of a check. Thus, although the state law you reference dictates non-discrimination against military members in credit transactions and would require the equal extension of deferred presentment options to military members on terms afforded the general public, federal law expressly prohibits the use of a check in a credit transaction with the specified military personnel. The answer to your first question under state law is therefore "yes," but the state law is preempted by federal law. In response to your second question concerning the applicable interest rate ceiling set in federal law, in my opinion the applicable ceiling is not applicable to the deferred presentment options about which you inquire because the federal law does not merely cap the interest rate on transactions which utilize a check, it prohibits such transactions altogether. The "check-cashing" services about which you inquire by definition include the use of a check, and are thus prohibited to the specified military members.
Question 1 — Whether the Military Service Protection Act prohibits acheck-casher from denying check cashing services with deferredpresentment options, otherwise known as payday loans, to members of activeand reserve components of the United States Armed Forces based on suchmembership.
The answer to this question is "yes" under state law, but in my opinion the applicable state law is preempted by federal law.
It is necessary to clarify some terms prior to addressing the applicability of the Military Service Protection Act. Because your question refers to "deferred *Page 3 
presentment options" in connection with the check-cashing business, I assume you mean to refer to the type of transaction outlined at A.C.A. § 23-52-102(5) (Supp. 2005), a portion of the Arkansas "Check-cashers Act." That provision defines a "deferred presentment option" as:
 . . . a transaction pursuant to a written agreement involving the following combination of activities in exchange for a fee:
 (A) Accepting a customer's personal check dated on the date it was written;
 (B) Paying that customer an amount of money equal to the face amount of that check less any fees charged pursuant to this chapter; and
 (C) Granting the customer the option to repurchase the customer's personal check for an agreed period of time prior to presentment of such check for payment or deposit. The term "deferred presentment" includes related terms such as "delayed deposit," "deferred deposit," or substantially similar terms evidencing the same type of transaction. . . .
As can be seen from the emphasized language above, a "deferred presentment option" involves the acceptance of a customer's check, which may then be repurchased by the customer prior to presentment of the check by the check-casher for payment or deposit by the issuing bank. You ask whether check-cashers may deny military service members access to such transactions under the Arkansas Military Service Protection Act.
As you note, the "Military Service Protection Act," or ("Act"), adopted in 2005, is codified at A.C.A. §§ 12-62-801 to-808 (Supp. 2007). The operative portion of the Act for purposes of your question is A.C.A. § 12-62-805(a), specifically subsection (a)(2)(D), emphasized below:
 (a)(1) The right of an otherwise qualified person to be free from discrimination because of military service is recognized as and declared to be a civil right. *Page 4 
 (2) This right shall include, but not be limited to:
 * * * (D) The right to engage in credit and other contractual transactions without discrimination. . . .
"Military service" under the Act means "current honorable service or honorable discharge from service within six (6) months from the date of the alleged discrimination in any active or reserve component of the United States armed forces. . . ." A.C.A. § 12-62-801(5) (Supp. 2007).
The language of the Act above prohibits discrimination based on military service in "credit . . . transactions." The Act in my opinion would prohibit a check casher from discriminating against military members by denying them check-cashing services with deferred presentment options on account of their military service. State law may not be viewed in isolation, however. As you note, applicable federal law and regulations also address the topic. In my opinion federal law preempts the application of the Military Service Protection Act in the manner you suggest. This issue will be discussed more thoroughly in response to your second question, below.
Question 2 — In light of the ceiling established by the John WarnerNational Defense Authorization Act for Fiscal Year 2007, I request youropinion about the applicability of such ceiling to deferred presentmentoptions arrangements offered by check-cashers in Arkansas including inparticular the maximum annual percentage rate of interest thatcheck-cashers in Arkansas may charge for deferred presentment optionsunder the Act.
In response to your second question, in my opinion the 36% federal ceiling is not applicable to Arkansas deferred presentment arrangements, because such arrangements are prohibited altogether for military service members under the federal statute and regulations.
The "John Warner National Defense Authorization Act of Fiscal Year 2007" is a voluminous law, one portion of which pertains to certain consumer credit transactions involving military personnel. Specifically,10 U.S.C. § 987 contains *Page 5 
nine subdivisions regulating such transactions. The federal statute first states in pertinent part that:
 (a) Interest. A creditor who extends consumer credit to a covered member of the armed forces or a dependent of such a member shall not require the member or dependent to pay interest with respect to the extension of such credit, except as —
 (1) agreed to under the terms of the credit agreement or promissory note;
 (2) authorized by applicable State or federal law; and
 (3) not specifically prohibited by this section.
 (b) Annual percentage rate. — A creditor described in this subsection (a) may not impose an annual percentage rate of interest greater than 36 percent
with respect to the consumer credit extended to a covered member or a dependent of a covered member.
(Emphasis added).[1]
Subsection (b) of the federal law excerpted above thus caps the annual interest rate on consumer credit for military members at 36%. This provision must be read in conjunction with other provisions of the federal statute, however, in order to answer your question regarding the interest rate applicable to deferred presentment arrangements executed in connection with "check-cashing."
In this regard, subsection (e) of the federal statute provides in relevant part as follows: *Page 6 
 (e) It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which —
 * * * (5) the creditor uses a check or other method of access to a deposit, savings, or other financial account maintained by the borrower, or the title of a vehicle as security for the obligation. . . .
(Emphasis added).[2]
As can be seen from this subsection of the federal statute, it is unlawful for a "creditor"[3] to extend "consumer credit"[4] to a "covered member"[5] or dependent, where the creditor "uses a check. . ." (Emphasis added). See also, 32 C.F.R. § 232.8(a)(5).[6] Thus, although subsection (a) of 10 U.S.C.A. § 987 caps interest *Page 7 
rates for military personnel at 36% for consumer credit transactions, subsection (e) prohibits certain other aspects of consumer credit transactions altogether where military personnel are involved. One of the things prohibited altogether by the federal law is the "use of a check" in connection with a consumer credit transaction. See, e.g., Comment, BigInterest Rates Under the Big Sky: The Case for Payday and Title LendingReform in Montana, 68 Mont. L. Rev. 181 (Winter 2007) (stating that "In addition to the cap, the bill bans mandatory arbitration clauses, prepayment penalties, and lenders' use of service members' checks as security for loans"). See also, Richard P. Eckman and Albert H. Manwaring, Congress Federalizes and Restricts High Cost Loans to MilitaryPersonnel, Consumer Finance Law Quarterly Report (Winter 2006) (stating that "The Act: caps the annual percentage rate of interest on loans to covered members at thirty-six percent; prohibits rollovers, renewals or refinances of loans to covered members; and prohibits holding checks, automated clearing house (ACH) authorizations or vehicle titles as security for a loan to a covered member").
The holding of a check is the essence of the "deferred presentment" "check-cashing" arrangements about which you inquire.[7] Rather than capping the interest rate at 36% on such arrangements, the federal law prohibits them altogether for the military personnel within the protection of the federal statute. In response to your second question, therefore, in my opinion the 36% federal ceiling is not applicable to Arkansas deferred presentment arrangements, because such arrangements are prohibited altogether for military service members under the federal statute and regulations.
Finally, in my opinion the federal law would preempt any operation of the state Military Service Protection Act as discussed in the context of your first question. In this regard, the federal statute states that: *Page 8 
 (d) Preemption. —
 a. Inconsistent laws. — Except as provided in subsection (f)(2),[8] this section preempts any State or Federal law, rule, or regulation, including any State usury law, to the extent that such law, rule, or regulation is inconsistent with this section, except that this section shall not preempt any such law, rule, or regulation that provides protection to a covered member or a dependent of such a member in addition to the protection provided by this section.
In my opinion, application of the Arkansas Military Service Protection Act to require check-cashers to engage in deferred presentment arrangements with military personnel, as suggested in your first question, would be inconsistent with the federal statute under the first sentence of the subsection above. The federal statute prohibits such transactions altogether for military personnel. In addition, application of the state law in that event would not, in my opinion, amount to "protection . . . in addition to the protection provided by" the federal law with respect to such arrangements for purposes of the second sentence above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The federal statute also: 1) requires certain mandatory loan disclosures (subsection (c)), 2) includes an express provision preempting inconsistent state laws (subsection d)), 3) sets out some additional limitations or prohibited conduct by lenders (subsection (e)), 4) sets applicable penalties and remedies (subsection (f)), 5) authorizes the Secretary of Defense to promulgate regulations (subsection h)), and 6) defines applicable terms (subsection (i)).
[2] Other prohibited actions under subsection (e) include those where the: 1) "creditor rolls over, renews, repays, refinances, or consolidates any consumer credit extended to the borrower by the same creditor with the proceeds of other credit extended to the same covered member or a dependent;" 2) the borrower is required to waive the borrower's right to legal recourse . . .;" 3) the creditor requires the borrower to submit to arbitration. . .;" 4) the creditor demands unreasonable notice from the borrower as a condition of legal action;" 5) "the creditor requires as a condition for the extension of credit that the borrower establish an allotment to repay an obligation;" or 6) "the borrower is prohibited from prepaying the loan or is charged a penalty or fee for prepaying all or part of the loan."
[3] "Creditor" is defined as including, among others, "a person — who — is engaged in the business of extending consumer credit; and meets such additional criteria as are specified . . . in [the] regulations."10 U.S.C. A. § 987 (i)(5).
[4] "Consumer credit" has the meaning provided for in the applicable regulations (10 U.S.C.A. 987(i)(6)), and is defined therein as "closed-end credit" offered or extended primarily for personal, family or household purposes, including "payday loans" with a term of 91 days or fewer and an amount less than $2000. See 32 C.F.R. § 232.3(b)(i).
[5] "Covered member" means a member of the armed forces on active duty for more than thirty days or on active Guard or Reserve duty.10 U.S.C. § 987(i)(1)(A) and (B).
[6] The applicable regulations echo the prohibition against the use of a check or other method of access to a deposit, savings, or other financial account maintained by the borrower, but the regulations except certain electronic fund transfers, direct deposit requirements, and the taking of security interests in funds deposited after the extension of credit, where the annual percentage rate is 36% or less. See32 C.F.R. § 232.8(a)(5). As these regulations are fairly recent, I have not found any case law discussing their consistency with the10 U.S.C. § 987 prohibition against using "other method[s] of access to a deposit, savings, or other financial account maintained by the borrower. . . ."
[7] In my opinion, any attempt to argue that the check in such a transaction is not used as "security for the obligation" under the Arkansas Check-cashers Act (see A.C.A. § 23-52-106), would not succeed before a court faced with the question.
[8] Subsection (f)(2) preserves remedies provided other than by virtue of 10 U.S.C. § 987.